UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RILAND BRYANT,

                Plaintiff,

                                                                    **Hon. Hugh B. Scott**

                v.

                                                                      08CV778S

                                                                     **Report**
                                                                      **&**
MELVIN WILLIAMS,                                          **Recommendation**
R. REYNOLDS,

                Defendants.

      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 5). The instant matter before the Court is defendants' motion (Docket No. 4[1]) to

dismiss. Responses to this motion initially were due by February 5, 2009, and any reply was due

by February 18, 2009, and the motion was deemed submitted (without oral argument) on

February 18 (Docket No. 6). On plaintiff's motion for extension of time to respond (Docket

No. 9) and due to his hospitalization, the response deadline was extended to April 3, 2009, with

---

[1]In support of this motion, defendants filed their notice of motion with Irby notice to a pro se litigant, W.D.N.Y. Loc. Civ. R. 56.2; see Irby v. New York City Transit Auth., 262 F.3d 412 (2d Cir. 2001), memorandum of law, Docket No. 4, and defense counsel's reply declaration with exhibits, Docket No. 13, including the declaration of Captain Brian McCauley of Willard, id. Ex. A, and inmate grievance coordinator at Five Points Correctional Facility Patrick O'Neill, id., Ex. C.
      In opposition, plaintiff sent a letter (with attachments) that was filed by the Court, Docket No. 7, and then sent another letter outlining his attempts at administratively resolving his claims, Docket No. 8. He also filed an affidavit, Docket No. 12, and a response, Docket No. 11, including what appears to be a notice of motion for summary judgment, id., with exhibits attached.

reply due by April 24, 2009, and the motion was deemed submitted on April 24, 2009 (Docket No. 10).

## BACKGROUND

Plaintiff, an inmate proceeding pro se, commenced this civil rights action alleging excessive force at Willard Drug Treatment Campus (hereinafter "Willard") on April 9, 2008 (Docket No. 1, Compl. at 4). He claims that he went to breakfast and, when he was almost done "he grabbed me in the collar of my sweatshirt pulled me to the floor then dragged me across the floor and then he kicked me twice in the back" (id. at 5, First Claim). He then claims that "they made me eat a bagel off the floor in front of over (100) one hundred parolee's [sic.] who were afraid to say that they had seen what happened," (id. at 6, Second Claim), and, when he went to sick call for pain in his back, he taken into a "rubber room" (id.; see Docket No. 4, Defs. Memo. at 1). He later claims that both these allegations are assault and sexual assault (Docket No. 1, Compl. at 5, 6), although no specific allegation of a sexual nature was made in that pleading. He is suing defendant Williams, the superintendent at Willard, in his official capacity, and defendant Reynolds, a corrections officer at Willard, both individually and in his official capacity (id. at 2). Plaintiff alleged in his First Claim that he did not exhaust his administrative remedies for this claim because he had problems accessing the law library (id. at 5). He also alleged that he failed to exhaust his administrative remedies for the Second Claim but explained that he did not know what his remedies for that claim were (id. at 6).

He seeks damages for his pain and suffering and damages totaling $1 million (id. at 5, 6).

*Defendants' Motion to Dismiss*

In their pending motion (Docket No. 4), defendants first contend that plaintiff admitted that he did not exhaust his administrative remedies prior to commencing this action, thus the case should be dismissed under the Prison Litigation Reform Act, 42 U.S.C. § 1997e (Docket No. 4, Defs. Memo. at 1, 2-3). They also contend that the Complaint does not detail the personal involvement of either named defendant (the superintendent of Willard and a corrections officer) in the alleged activities (id. at 3, 4).

*Plaintiff's Letter and Response*

Plaintiff's letter appears to be a motion seeking the relief that can be granted (Docket No. 7, at 2), apparently a motion for summary judgment (see id. at 4). Plaintiff did not include a statement of material facts not in issue, see W.D.N.Y. Loc. Civ. R. 56.1(a). Plaintiff here asserts the forms of personal involvement recognized in this Circuit (id. at 3). Plaintiff states that defendant Reynolds was the defendant involved in the two claims plaintiff alleged (id. at 1). He amplifies the allegations in the Complaint, stating that, on April 9, 2008, defendant Reynolds was angry (for some reason unknown to plaintiff) and picked plaintiff apparently because he was the first inmate available. In addition to what was alleged in his pleading, plaintiff claims in his letter that Reynolds grabbed plaintiff, pulled him out of his chair and dragged him across the floor of the mess hall and then kicked plaintiff twice in the back. (Id. at 2.) The next morning, plaintiff reported to sick call, when he was taken into the rubber room by Reynolds and two other unnamed officers (id.). He claims that after this he became "a marked person on the compound," receiving Tier II tickets (id.).

Plaintiff also argues that "administrative remedies as are available are exhausted and is [sic] not required for a claim" (id. at 1). He contends that Willard did not have grievance forms so he wrote to the superintendent and the deputy superintendent without success. Then he wrote to the Commissioner and Deputy Commissioner of the Department of Corrections Services, who replied that they would inform defendant Williams. Plaintiff states that he next wrote to the Inspector General, who interviewed him, took his complaint and advised him to get a lawyer. Plaintiff was removed from the program at Willard and later transferred to Five Points Correctional Facility, where he filed a formal grievance. The lieutenant there took the grievance, interviewed him, but never got back to plaintiff. Plaintiff again wrote to the Commissioner, Deputy Commissioner, and Inspector General, received similar responses, and he then commenced an action in the New York State Court of Claims, Claim No. 115993, and filed this federal action. (Docket No. 8.) He concludes by asking "if that is not considered exhausting remedies?" (Id.)

Plaintiff then supplemented this response by filing additional documents, wherein he claims that the three-tier grievance process (common at Department of Correctional Services' facilities) did not exist at Willard (Docket No. 11, Pl. Response at 1; Pl. Notice of Motion at 1-2). Plaintiff contends that grievances were heard by the sergeant for apparent informal resolution (see id., Pl. Response at 1). Plaintiff instead wrote to the defendant superintendent and attempted to appeal the superintendent's inaction to the Commissioner (id.), as well as writing to state court judges, the inspector general, the Seneca County District Attorney, and the United States Department of Justice (Docket No. 12, Pl. Response at 2). He complains that he sought review of his program evaluations (Docket No. 11, Pl. Response at 1-2) to no avail. Plaintiff also

4

complained about the military regime of the Willard program and his inability to complete such a program given his age (see Docket No. 12, Pl. Response at 3).

*Defendants' Reply*

Defendants argue that Willard had a grievance procedure (Docket No. 13, Defs. Atty. Decl. ¶ 4, Ex. A, McCauley Decl. ¶ 2, Ex. B, Directives 4041, 4040). According to the parolee manual for Willard detainees (id., Ex. A, McCauley Decl. ¶ 3, exhibit to McCauley Decl., "Parolee Handbook, Willard Drug Treatment Campus," Jan. 2007), a grievant airs his or her grievance at community meetings or "clearings"; if resolution is not reached there, then he or she may direct the complaint to the Treatment Team, Security Supervisor, and ultimately to the Executive Team. If still not remedied, the parolee "will be provided with grievance form 2131 and follow the guidelines set forth in Directive #4041," with such grievance forms available by writing the captain who has been designated to handle all parolee grievances (id., at 14). Willard's internal procedure is intended "to supplement, not replace, existing formal or informal channels of problem resolution," to promote mediation and conflict resolution and not support an adversarial process (id. at 15). Captain Brian McCauley is the official charged with overseeing the grievance program at Willard (id., Ex. A, McCauley Decl. ¶ 1).

Authorities at neither Willard nor Five Points Correctional Facility have any record of a grievance being filed by plaintiff arising from this incident (id., Ex. A, McCauley Decl. ¶ 3, Ex. C, O'Neill Decl. ¶¶ 2-3).

**DISCUSSION**

I.       Standard of Review

Defendants have moved to dismiss the Complaint on the grounds that it states a claim for which relief cannot be granted. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id., 127 S.Ct. at 1974 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007). To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Bell Atlantic, supra, 127 S.Ct. at 1965; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5. A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.

6

New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

The pleading of a pro se plaintiff, however, is to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

> "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, [550 U.S. 554, ___,] 127 S. Ct. 1955, 1964, (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Bell Atlantic Corp., supra, at ___, 127 S. Ct. 1955, 1964, (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))."

Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (per curiam). In Erickson, the Court held that the Tenth Circuit departed from the liberal pleading standards of Rule 8(a)(2) by dismissing a pro se inmate's claims.

> "The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed pro se is 'to be liberally construed,' [Estelle v. Gamble, 429 U.S., 97, 106 (1976)], and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

127 S.Ct. at 2200; see Boykin, supra, 521 F.3d at 213-14.

II.     Prison Litigation Reform Act

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), states "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other

7

Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002), rev'g, Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000). The Supreme Court found that "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," Nussle, supra, 534 U.S. at 524-25. The act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court" id. at 528, and clarify the contours of the controversy once it is litigated, id. at 525.

  A.  Second Circuit Law of Exhaustion

Plaintiff has an obligation under the PLRA to exhaust "such remedies when Congress has specifically mandated that he do so." Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001) ("Giano I"). The fact that plaintiff was in Willard Drug Treatment Center is of no moment, the obligations under the PLRA reach him when he was in Willard as well, see Ruggerio v. County of Orange, 467 F.3d 170, 174-75 (2d Cir. 2006).

Exhaustion under the PLRA, however, is not jurisdictional in this Circuit, Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); it is an affirmative defense for defendants to assert, Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999); Ziemba, supra, 366 F.3d at 163, subject to certain defenses such as estoppel, Ziemba,

8

supra, 366 F.3d at 163; Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004) (defendants' threats estopped exhaustion defense).

The Second Circuit held, on the issue of whether the provision of the PLRA that "such administrative remedies **as are available** are exhausted," 42 U.S.C. § 1997e(a) (emphasis added), that inmate plaintiffs could be excused from non-compliance with administrative procedures or use alternative means to exhaust their administrative remedies from the three-tier grievance and appeal process now available from the DOCS, see Giano v. Goord, 380 F.3d 670 (2d Cir. 2004) ("Giano II") (special circumstances establish plaintiff's exhaustion); Hemphill, supra, 380 F.3d 680; Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004) (defendants waived PLRA exhaustion defense); Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004) (defendants' behavior sometime renders administrative remedies unavailable for exhaustion purposes, such as plaintiff prevailing in the grievance process but defendants not implementing the grant of the relief); see also Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004) ("Ortiz II") (total exhaustion not required for mix of exhausted and unexhausted claims).

Although not expressly part of the Second Circuit's three-step inquiry, these cases established an initial inquiry that the Court must make before beginning the three-step process, whether plaintiff "plausibly seeks to counter defendants' contention that the prisoner failed to exhaust available administrative remedies," Hemphill, supra, 380 F.3d at 686. If plaintiff has done this, this Court then is required to conduct the three-part inquiry. Id. Under this three-step inquiry, first, the Court must ask whether administrative remedies existed, and if so whether defendants' actions rendered those remedies unavailable to plaintiff. Id.; Abney, supra, 380 F.3d 663. Second, the Court must consider whether defendants forfeited the affirmative defense of

9

exhaustion either by waiving it or by interfering with plaintiff's efforts to exhaust. Johnson, supra, 380 F.3d 691; Ziemba, supra, 366 F.3d 161. Third, if the Court finds that administrative remedies were available to plaintiff and that defendants have not forfeited the exhaustion defense, then the Court must ask whether there exist "special circumstances" which justify plaintiff's failure to exhaust. Giano II supra, 380 F.3d 670; Rodriguez v. Westchester County Jail Correctional Dep't, 372 F.3d 485 (2d Cir. 2004); Berry v. Kerik, 366 F.3d 85 (2d Cir. 2003).

The Second Circuit did not set forth what instances qualify as "special circumstances" but stated that courts must determine whether such circumstances exist "by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." Giano II, supra, 380 F.3d at 678. The Circuit Court considered whether "special circumstances" existed in these cases and found they exist upon an inmate's reasonable (if erroneous) interpretation of DOCS regulations, Giano II, supra, 380 F.3d at 689-91; see Hemphill, supra, 380 F.3d at 689-91 (remanded on question whether regulations were clear as to effect of writing directly to superintendent and whether threat of one defendant constitutes a special circumstance). The Second Circuit also recognized an inmate's reliance upon the court's earlier construction of the law (even if later found to be erroneous) was a justifying "special circumstances." See Rodriguez, supra, 372 F.3d at 487 (order denying rehearing), cited in Giano II, supra, 380 F.3d at 675; cf. Berry, supra, 366 F.3d at 87-88 (in absence of justification for not following administrative remedies, dismissal of inmate's action appropriate).

B.      Application of Second Circuit Standard

In the Complaint, plaintiff admits to not grieving his claims, based upon either not having access to the law library or not being aware of his remedies (see Docket No. 1, Compl. at 5, 6). From the record before the Court, plaintiff appears to have failed to grieve these incidents but attempted to seek relief by informal means due to his belief that there were no grievance forms or grievance procedure available at the Willard facility.

1.      Grievance Procedure Available at Willard

In order to make the determination of whether an inmate has exhausted his administrative remedies, review of the process available to him is required. Correctional facilities in New York State have a three-tier grievance procedure that consists of filing a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC"); then an appeal to the superintendent; then an appeal of the superintendent's decision to the Central Office Review Committee. N.Y. Comp. Codes R. & Regs. tit. 7, pt.701 (Docket No. 13, Defs. Atty. Reply Decl., Ex. B (also referred to as Dir. No. 4040)); see Harris v. Totten, 244 F. Supp.2d 229, 233 (S.D.N.Y. 2003). The first step has the inmate filing an Inmate Grievance Complaint Form, 7 N.Y.C.R.R. § 701.5(a)(1), within twenty-one days of the incident, id.; N.Y. Corr. Law § 139. The facility's IGRC then reviews the grievance and attempts to resolve it informally and, if resolved to the satisfaction of the grievant inmate, the resolution shall be entered on the grievance, 7 N.Y.C.R.R. § 701.5(b)(2). This inmate grievance program is intended to supplement existing formal and informal channels for problem resolution, Id. § 701.1(b). The inmate is "encouraged to resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance," id. § 701.3(a). If an Inmate

Grievance Complaint Form (Form #2131) "is not readily available, a complaint may be submitted on plain paper," id. § 701.5(a)(1).

The issue here is whether Willard has this three-tier grievance procedure as other state correctional facilities. Plaintiff claims that Willard Drug Treatment Campus does not have inmate grievance forms (Docket No. 7, Pl. Ltr. at 1, at page 6 of 7) or the three-tier grievance process (Docket No. 11, Pl. Response at 1; Pl. Notice of Motion at 1-2). Instead, plaintiff wrote to the defendant Superintendent Williams and the deputy superintendent directly and apparently received no response to his letters (Docket No. 7, Pl. Ltr. at 1, at page 6 of 7), and then plaintiff apparently did not appeal their inaction. Plaintiff later filed a grievance once he was transferred to another facility, although the viability of a grievance filed in a second facility for events in the first facility is questionable, cf. Rosario v. Kurtz, No. 02CV134, 2004 U.S. Dist. LEXIS 18051, at *7-10, Docket No. 38, Order of Jan. 4, 2004, at 5-6 (W.D.N.Y. 2004) (Scott, Mag. J.).

Defendants argue generally that the three-tier grievance procedure exists (Docket No. 4, Defs. Memo. at 2-3), and later argue that this procedure was available in Willard (Docket No. 13, Defs. Atty. Reply ¶ 4), producing the parolee handbook which elaborated the facility's internal grievance procedure and its reference (essentially as an appeal) to the DOCS grievance procedure (id. Ex. A). It should be noted that other inmates at Willard were able to file grievances, see, e.g., Nieblas v. Ricci, No. 03CV6225, 2008 U.S. Dist. LEXIS 3404, at *10 (W.D.N.Y. Jan. 16, 2008) (Siragusa, J.); Lynch v. Dennison, No. 07CV134, 2007 U.S. Dist. LEXIS 38033, at *5 (W.D.N.Y. May 23, 2007) (Siragusa, J.) (in forma pauperis Order).

Plaintiff did not use either the internal Willard grievance procedures (by raising it at community meetings or clearings, appealing to the Treatment Team, Security Supervisor, or

12

Executive Team, unless the executive team consists of the Superintendent in which case plaintiff did write to him in the first instance about this incident) or seek a grievance form from the Captain or file such a form about this matter. Thus, plaintiff failed to exhaust the internal grievance processes at Willard as well as the formal DOCS grievance procedures.

Plaintiff claims that he wrote to the Superintendent, the Commissioner, Deputy Commissioner and Inspector General, as well as filing a Court of Claims action (among other avenues of relief sought) seeking redress prior to commencing this action (see Docket No. 8; Docket No. 12, Pl. Response at 3), although he did not produce copies of the documents showing his attempts at seeking relief. Even if the informal procedure at Willard is as plaintiff represents (making a complaint with the sergeant, cf. Docket No. 11, Pl. Response, Jan. 3, 2009, at 1), plaintiff fails to show he exhausted this informal avenue. Plaintiff writes that an "issue being grieved never goes past the [sergeant, sic], who attempts to remedy but if that [doesn't, sic] work your days at Willard are numbered!" (Id.). Here, plaintiff never claims that he attempted to grieve these claims through the sergeant.

Regarding the first Second Circuit step, the grievance procedures (both Willard's local processes and DOCS's grievance scheme) existed and plaintiff has not shown that defendants have hindered his ability to exercise those regimes. Ignorance of the grievance procedures does not excuse plaintiff's failure to follow them. Furthermore, plaintiff's reference to the sergeant as being a potential gatekeeper for grievances does not establish that defendants barred his ability to grieve since plaintiff does not name the sergeant as a defendant or as hindering his means to grieve these complaints or showed that he tried to use the sergeant to raise these grievances. Similarly, as for the second step, plaintiff generally allege that complaints raised to the sergeant

13

go nowhere, but does not allege more specifically hindering by defendants or officials at Willard of plaintiff's ability to grieve. Defendants raised the exhaustion defense early in this motion to dismiss before filing a responsive pleading. As for the third step, the issue is whether "special circumstances" justify plaintiff's failure to exhaust. The Court next addresses the existence of such "special circumstances" here.

        2.        Existence of Special Circumstances

The fact that defendant superintendent Williams did not respond to plaintiff's letter, or even refer it to the appropriate grievance officials within Willard, may constitute a special circumstance for the Court to conclude that plaintiff in effect exhausted his administrative remedies, see Abney, supra, 380 F.3d at 667. Plaintiff does not contend that a sergeant barred him from raising these claims administratively. Instead, it appears that plaintiff was not aware of these grievance procedures. While reliance on reasonable interpretation of the grievance process has been found to constitute special circumstances, Hemphill, supra, 380 F.3d at 686, 689-90, ignorance or disregard of such procedures is not an excusing special circumstance.

As a result, plaintiff should be deemed **to have not exhausted** his administrative remedies and defendants' motion to dismiss on this ground should be **granted**. For a complete report, the Court next considers defendants' alternative defense regarding the personal involvement of Superintendent Williams and plaintiff's vague allegations as to the involvement of defendant Reynolds.

III.    Personal Involvement

Defendants alternatively argue that the Complaint fails to allege personal involvement to state a claim against either defendant (Docket No. 4, Defs. Memo. at 3-5). First, the Complaint

14

does not allege who performed the actions against plaintiff that caused him harm and, second, it fails to allege Superintendent Williams' personal involvement in this incident (id. at 4-5). Personal involvement of a defendant is a prerequisite to award damages for a claimed constitutional deprivation, McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1979) (Docket No. 4, Defs. Memo. at 4).

The Complaint does not specify which of the defendants did the acts alleged in either claim. Plaintiff's subsequent letter clarifies that he alleges defendant Reynolds as the actor (see Docket No. 11, Pl. Motion at 2, Ex. (Aug. 20, 2008, pl. letter)). But construing pro se papers liberally, see Erickson, supra, 127 S.Ct. at 220; Boykin, supra, 521 F.3d at 213-14, the Complaint should be construed as naming Reynolds as the alleged perpetrator in both claims. The Complaint states on its face a claim against Reynolds for his alleged involvement. Thus, as for Reynolds such claims against him that survive on exhaustion grounds, his motion to dismiss on the basis of lack of alleged personal involvement (or for plaintiff's vague allegations regarding the accused) should be **denied**.

But, as for Superintendent Williams, plaintiff makes no allegation of his role in these incidents. Plaintiff later only alleges some form of supervisory liability, claiming that Williams was the "Boss" of the facility (Docket No. 11, Pl. Notice of Motion at 2). In his letter (Docket No. 7, at 3, at pages 6 and 7 of 7) and his subsequent response (Docket No. 11, Pl. Notice of Motion at 2), plaintiff lists five types of involvement recognized by the Second Circuit, direct involvement, failure to remedy the violation after notice, creation of a policy or custom which permitted the incident, actions that constitute gross negligence in management, and actions exhibiting deliberate indifference by failing to act on information that unconstitutional acts were

15

occurring, see Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (see Docket No. 4, Defs. Memo. at 4). Plaintiff, however, fails to allege facts to support Williams had any of these types of involvement. The only named actor (in plaintiff's subsequent letter) directly involved was Reynolds; he made no allegation that Williams was directly involved in either incident. Plaintiff does not allege furnishing any notice to Williams prior to the incident to make him responsible for remedying a subsequent violation or any notice of unconstitutional acts that Williams ignored, save possibly plaintiff's notice of the incidents themselves. Plaintiff also does not allege the existence of any custom or policy that supports the incident, save stating that Williams was the "Boss" of the facility. Finally, plaintiff does not allege any management action or inaction by Williams that would constitute gross negligence in allowing the incidents to occur. All plaintiff now contends is that Williams was the "Boss" of the facility, arguably asserting some form of supervisory liability that is not sufficient to state a claim of personal involvement to keep Williams in this case, Colon, supra, 58 F.3d at 973 (in summary judgment motion, plaintiff's verified complaint alleging that he wrote to defendant superintendent and no action was taken fails to raise an issue of fact as to that defendant's personal involvement). Thus, on failure to allege personal involvement, the motion to dismiss the Complaint as for Williams should be **granted**.

## CONCLUSION

Based upon the above, it is recommended that defendants' motion to dismiss (Docket No. 4) be **granted as to defendant Ricky Reynolds and defendant Williams on the grounds of plaintiff's failure to exhaust his administrative remedies**. Alternatively, if reached, defendants' motion to dismiss should **granted as to defendant Melvin Williams on failure to**

**allege personal involvement and granted**, but dismissal of claims against Reynolds based upon failure to allege personal involvement should be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and

recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                                        */s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       April 29, 2009